In re Albert Curtis HUTCHINS, Jr.

Albert Curtis HUTCHINS, Jr., Plaintiff,

v.

FORDYCE BANK AND TRUST COMPANY, FBT Bancshares, Inc., Roy McClain and Does 1 through 10, Defendants.

Bankruptcy No. 96–50949 S.
Adversary No. 97–5025.

United States Bankruptcy Court,
E.D. Arkansas,
Pine Bluff Division.

· Sept. 11, 1997.

David D. Coop, Chapter 13 Trustee.

Stephen L. Gershner, Little Rock, AR, for Plaintiff.

Janet Pulliam, Pamela Dixon, Little Rock, AR, for Defendant.

## *ORDER*

MARY D. SCOTT, Bankruptcy Judge.

THIS CAUSE is before the Court upon the following motions:

1. Defendants' Motion for Reconsideration of Order to Compel and Motion to Strike, filed on July 24, 1997.

2. Defendants' Motion to Strike Plaintiff's Supplement to Witness List and Memorandum of Law in Support, filed on August 1, 1997.

3. Defendants' Motion for Protective Order, filed on August 6, 1997.

4. Plaintiff's Motion to Extend Time for Taking Depositions, filed on September 2, 1997.

5. Defendants' Motion to Extend Time for Taking Depositions, filed on September 4, 1997.

The debtor filed his Chapter 13 petition in bankruptcy on September 30, 1996. Approximately one week after the filing of the case, Fordyce Bank and Trust Company ("the bank") authorized attorneys to investigate and evaluate debtor's work performance. The attorneys conducted an investigation and prepared reports for the benefit of their clients, the Fordyce Bank and Trust and Bancshares, Inc. After these defendants terminated debtor's employment contracts with them, the debtor initiated this separate lawsuit stating causes of action for violation of the automatic stay, 11 U.S.C. § 362, and for discriminating against the debtor because of his bankruptcy filing, 11 U.S.C. § 525. Other state law counts are also alleged. The attorneys representing the defendants in this adversary proceeding are the same attorneys

who were hired to investigate and evaluate the debtor's work performance.

On December 11, 1996, the plaintiff propounded the following discovery request to the defendants:

*Plaintiff's Interrogatory No. 3:* Identify each document or other writing prepared by Pulliam Law Offices, P.A., in connection with the termination of Curtis Hutchins' employment agreement and for each such document state:

a. The name of the person(s) who prepared the document or writing;

b. The names of all person(s) receiving the document or writing;

c. The date the document or writing was prepared

*Response:* The following documents were prepared by Pulliam Law Offices, P.A.:

(1) a. Report for Defendant Fordyce Bank and Trust Co.

b. Pulliam Law Offices, P.A.

c. October 22, 1996

(2) a. Report for Defendant Fordyce Bank & Trust Co.

b. Pulliam Law Offices, P.A.

c. October 22, 1996

The defendants refuse to produce these documents, asserting the attorney-client privilege and the work product privilege. This Court, by Order entered on July 15, 1997, granted a motion to compel defendant Fordyce Bank to turn over these documents. Defendants seek reconsideration of this July 15, 1997, Order.[1]

Subsequently, the plaintiff served upon the defendants' attorneys a subpoena demanding their appearance at a deposition and directing them to produce

All correspondence, memoranda, and other communications between Pulliam Law Offices, P.A. and any of the defendants in this case during the period of October 1, 1996, through plaintiff's removal from the board of directors of FBT Bancshares, Inc. on February 18, 1997, and

All notes, memoranda, interview summaries, or writings of any nature prepared or received by Pulliam Law Offices, P.A. during the period of October 1, 1996, through February 18, 1997, relative to the employment and termination of employment of Albert Curtis Hutchins, Jr. at FBT Bancshares, Inc. and/or Fordyce Bank & Trust Company.

Plaintiff also filed a supplement to its witness list,[2] listing the attorneys as persons to be called to testify at trial. Defendants have requested a protective order based upon the attorney-client privilege and moved for an order striking the supplement to witness list.

Rule 26(b) provides in pertinent part:

(1) Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. The information sought need not be admissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

\*\*\*

(3) Subject to the provisions of (b)(4) of this rule, a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of

---

1. The defendants also request that the Court strike (or, more properly, amend, Fed. R. Bankr. Proc. 9024) footnote 1 of that Order. Footnote 1 reflects the Court's concern that there would be an issue of whether the defendants' attorneys could be potential witnesses in this matter. That footnote expressed no opinion on the issue, but merely pointed out to the defendants' attorneys that the issue could exist such that they should evaluate the issue. The Court did not, as defendants seem to believe, indicate that counsel should be or would be required to withdraw. Accordingly, the motion to strike, which the Court treats as a motion to amend its findings, is inappropriate, unnecessary, and will be denied.

2. The supplement was filed 47 days after the date directed in the Court's Pretrial Order and 43 days after the plaintiff's initial witness list was untimely filed.

litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that party is unable without undue hardship to obtain the substantial equivalent of the materials by other means....

## I. The Motion for Reconsideration

The Arkansas Rules of Professional Conduct provide that attorneys owe a fiduciary duty to their clients, including business entities. Ark. R. Prof. Conduct, 1. 13(a). Although the fiduciary duties are owed to an entity, the attorneys must, by necessity, deal with and take direction from the individuals operating the business entity. *See id.* In this instance, in performance of the duties for which they were hired, the attorneys communicate with the officers and directors of the banks. Similarly, the directors of the business entities, in this instance financial institutions, owe fiduciary duties to the depositors of the bank and, in the course of their fiduciary duties, must seek legal or other business advice and make decisions based upon such advice. *See* A.C.A. § 23–32–224(d), (e); *cf.* A.C.A. § 4–27–830.

■■■ Communications between attorneys and their clients are protected by an attorney-client privilege, and communications between attorneys and the representatives of a corporation, acting in such a representational capacity, are privileged. Rule 1.6, Arkansas Rules of Professional Conduct. Again, however, when representing a business entity, the communications are between the attorneys and the appropriate representatives or employees of the banking entities.[3] Likewise, the directors of the bank, acting in their official capacities are entitled to the communications from their attorneys. *Gottlieb v. Q.T. Wiles,* 143 F.R.D. 241, 246 (D.Colo.1992). In this case, the attorneys were purportedly hired by the banks, acting through its directors, to investigate a fellow director. The attorneys submitted their report to the directors, and the directors (excluding plaintiff) apparently or allegedly utilized this report to terminate plaintiff's employment contracts. There is no dispute that, at the time the attorneys' reports were prepared, October 22, 1996, plaintiff debtor was an officer and director of the defendant entities. Based upon this status, this Court previously held that the debtor was entitled to review the documents because he was, at least until October 30, 1996, when he was removed as a director, within the class of persons protected by the attorney-client privilege. The defendants ask for reconsideration of the ruling that the debtor plaintiff may obtain documents protected by the attorney client privilege.

Defendants first argue that this Court erroneously deprived the *organization* of its right to exclude an *individual* from representation by the organization's attorney. Defendants derive this argument from Rule 1.13, Arkansas Rules of Professional Conduct, which establishes the nature of the relationship between an attorney and an organizational client. Rule 1.13 provides that the client is the organization, acting through its "duly authorized constituents." The comments to the rule make it clear that the constituents of the organization are not the clients of the lawyer and that the lawyer does not necessarily owe any fiduciary duty to the individual officers and directors of the organization. The lawyer is also prohibited from disclosing, even to the constituents, "information relating to the representation except for disclosures explicitly or implied authorized by the organizational client in order to carry out the representation or has otherwise permitted by Rule 1.6." Rule 1.13, comment.

■■■ Although the defendants' conclusions are correct, the Court does not reconsider based upon their analysis. The error in defendant's argument is two-fold. First, the rule they would impose—that an organization may exclude an individual from representation by the corporation's attorney, mis-

---

3. The privilege is not limited to communications from the officers and directors of the bank acting in their official capacities, but may extend to communications from employees of the organization. *Upjohn Company v. United States,* 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981).

states the meaning and intent of the rule. The rule governs attorneys' relations with their organizational clients and imposes particular duties upon the attorneys. The organization's right to exclude a director from its internal decision making process is a matter for the state law governing such entities—not the rules of professional conduct governing attorneys. Secondly, the argument misstates this Court's ruling. The defendants appear to assert, particularly after a review of the cases they cite, that the Order of July 15, 1997, imposed a duty upon them to represent the plaintiff in some individual capacity.[4] This is untrue. This Court's Order did not impose any fiduciary or representational duty upon the attorneys with respect to the individual plaintiff. Rather, the Order stated that the plaintiff was within the class of persons entitled to receive privileged communications from the attorneys on matters regarding the attorneys' representation of the organization. This conclusion was based upon the fact that attorneys communicate with their organizational clients through authorized representatives, *i.e.*, individuals. Since the plaintiff, absent any evidence of exclusion, was one of those persons authorized by the organization to receive such communications, and, under state law, had a fiduciary duty as a director to operate the organization, he was entitled to receive the appropriate communications from the organizations lawyers. *Gottlieb v. Q.T. Wiles,* 143 F.R.D. 241, 246 (D.Colo.1992); *Resolution Trust Corp. v. Adams,* No. 93–389–CIV–ORL–18, 1994 WL 315646 (M.D.Fla. Apr. 14, 1994); *Kirby v. Kirby,* 1987 WL 14862 (Del. Ch.Ct. July 29, 1987). The fact that the attorneys in this case did not represent the plaintiff in any individual capacity does not, without additional evidence, necessarily deprive plaintiff of his rights to receive information from the organization's attorneys or relieve him from his obligations as a director.

The attorneys and the directors in this case were thus presented with a dilemma: they were obligated to investigate any improper behavior of a co-director should such a situation appear to exist. The attorneys,

as representatives of the corporation, and the corporation as client, were entitled to the protection and privileges attendant to such consultation and investigation. The attorneys and corporation were entitled to rely on the existence of such privileges in order to effect proper, frank, and complete consultation. This plaintiff, as a director of the corporation, normally would be part of these consultations and disclosures. Based upon this general rule, and the authority previously cited by the Court, this Court granted the motion to compel.

Although the defendants cite several cases regarding similar discovery issues, the cases are not really helpful because they do not address the issue presented here: whether a former corporate director is entitled to seek and obtain documents which were generated by corporate attorneys, technically during his tenure as director, but which resulted in the termination of the very status upon which he relies for his right to access. The Court believes under the circumstances that reconsideration is appropriate.

The dispute regarding disclosure in this case is problematic because the plaintiff is not seeking the documents based upon his fiduciary role as a corporate director. Rather, he seeks the documents in discovery of his lawsuit seeking to vindicate personal rights. In analyzing this situation, the Court must look to the law governing these Arkansas financial institutions. Under Arkansas law, the affairs of a like institution are conducted by its board of directors. A.C.A. § 23–32–224(a)(1); *cf.* A.C.A. § 4–27–801 (corporations). Any dispute among the directors would presumably be resolved by a majority of affirmative votes on an issue. *Cf.* A.C.A. § 4–27–824. In the instant case, the directors of the defendant financial institutions are asserting the attorney-client and work-product privileges on behalf of the corporations. The plaintiff, as a lone director, cannot overrule the will of the board.

While it is true that the corporation can only act through human beings, and the

4. The cases cited by the defendants indicate, and correctly so, that attorneys who represent an organization do not necessarily also represent any *individuals* within that organization. *See, e.g., Lane v. Chowning,* 610 F.2d 1385 (8th Cir. 1979).

authority to assert and waive privileges rests with management, a dissident director is not management. Such a director has no authority to frustrate the attorney-client privilege asserted by the corporation when such an assertion is in opposition to the will of the majority of directors. *Milroy v. Hanson*, 875 F.Supp. 646, 649–50 (D.Neb.1995). Thus, the attorney client privilege is properly asserted against the plaintiff in this action despite his former status as a director of the corporation. *See id.* at 650 (citing *Hoiles v. Superior Court*, 157 Cal.App.3d 1192, 1201–02, 204 Cal.Rptr. 111 (1984)).

■ Based upon this analysis, upon reconsideration, the Court agrees that the attorney-client and the work-product privileges may be asserted as against this plaintiff. The court further agrees that there has not been a sufficient showing under Rule 26 that plaintiff is in "substantial need of the materials in the preparation of the party's case" *and* that the "party is unable without undue hardship to obtain the substantial equivalent of the materials by other means." The results of the investigation summarized in the reports sought by the Motion to Compel can, in fact, be obtained during plaintiff's discovery, without undue hardship; plaintiff can, and indeed, apparently already has, interviewed or deposed most of the witnesses in this case, essentially a duplication of the corporate attorneys' initial investigation into his work performance. Inasmuch as the particular reports sought in the motion to compel filed on January 28, 1997, are the work product of the entities' attorneys and thus privileged and the plaintiff has not met the requirements of Rule 26(b)(3), and upon reconsideration of the Court's Order of July 15, 1997, the plaintiff is not entitled to production of the two reports.

## II.  The Motion for Protective Order and Motion to Strike

The defendants' Motion for Protective Order seeks a ruling that the defendants' attorneys not be required to appear for their own depositions and that they not be required to produce numerous privileged documents. For the reasons discussed above, the Court agrees that defendants' attorneys should not be required to appear for deposition or produce any privileged documents.

Finally, the Court notes that it is apparent that the attorneys for the defendants have reviewed their legal and ethical obligations to their clients. The Court has reviewed the circumstances and the appropriateness of the assertion of the attorney-client and work product privileges. Inasmuch as the assertion of these privileges is proper, plaintiff will also not be permitted to call, at the trial of this matter, the defendants' attorneys as witnesses.

**ORDERED** as follows:

1. Defendants' Motion for Reconsideration of Order to Compel and Motion to Strike, filed on July 24, 1997, is GRANTED in part and DENIED in part. The Motion for Reconsideration is granted such that the defendants shall not be required to produce the reports prepared by their attorneys on their behalf. The Motion to Strike is denied.

2. Defendants' Motion to Strike Plaintiff's Supplement to Witness List and Memorandum of Law in Support, filed on August 1, 1997, is GRANTED.

3. Defendants' Motion for Protective Order, filed on August 6, 1997, is GRANTED.

4. Plaintiff's Motion to Extend Time for Taking Depositions, filed on September 2, 1997, is DENIED as to any request to take the deposition of defendants' attorneys and GRANTED as to other depositions.

5. Defendants' Motion to Extend Time for Taking Depositions, filed on September 4, 1997, is GRANTED.

**IT IS SO ORDERED.**